UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CR-00899-RLW |
| | ) | |
| THOMAS B. WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR IMMEDIATE RELEASE**

The United States of America, through undersigned counsel, respectfully opposes Defendant's Motion for Immediate Release (Doc. #225) for the following reasons.

**Introduction**

Defendant seeks reconsideration of the Court's detention order, which imposed pretrial detention up Defendant's waiver of hearing and a finding by the Pretrial Services Office that the Defendant represents both a flight risk and a danger to the community. (Docs. #56, 87). Critically, Defendant does not challenge the Pretrial Service Officer's determination that he poses both a flight risk and a danger to the community. Rather, Defendant cites his own positive COVID-19 diagnosis in an attempt to justify his immediate release. But Defendant has not identified any valid basis for this extraordinary relief. Accordingly, the Court should reject Defendant's efforts to unsettle its determination that pretrial detention is necessary in this case.

**Facts**

On or about October 31, 2018, the Defendant was indicted with three other co-conspirators for aggravated assault in aid of racketeering, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2. A writ was filed ordering the transfer of the Defendant from the custody of the

1

Missouri Department of Corrections (where he was serving a sentence he has since completed) into federal custody and on January 14, 2019, the Defendant had his initial appearance before a Magistrate Judge in the Eastern District of Missouri.  A Pretrial Services report was completed in which the respective officer determined, based on Defendant's lengthy criminal history and other factors, that the Defendant represented both a flight risk and a danger to the community, and that he should be detained pending trial.  (Doc. #56).  In a supplemental report filed on April 23, 2020, the Pretrial Services Office has maintained this position.  (Doc. #226).  On or about January 14, 2020, the Defendant waived a detention hearing and was ordered detained pending trial.  (Doc. #87).

On or about March 10, 2020, the Defendant entered a plea of guilty to Count One of the Indictment.  Sentencing on this matter is currently set for June 17, 2020.

On or about April 15, 2020, counsel for the Defendant filed a Motion for Immediate Release, stating that the Defendant had tested positive for COVID-19 and that, as such, he should be released from custody and remanded to the care of his girlfriend.  (Doc. #225).  The Defendant is currently confined in the Lincoln County jail awaiting sentencing.

The Government received information from the U.S. Marshals relative to the treatment Wilson was receiving on or about April 16, 2020.  The Marshals were informed by the Lincoln County jail that Wilson was quarantined in the booking area of the jail and was been seen by medical staff daily to have his temperature taken.  At that time, a doctor who visited the facility determined that since Wilson was not showing any fever, cough, or body aches or pains, that keeping him quarantined and under constant observation was the extent of the care he necessitated.

In the Eastern District of Missouri, the U.S. Marshals Service has recommended that all pretrial detention facilities follow the COVID-19 Action Plan from the Federal Bureau of Prisons

("BOP"),[1] as well as relevant guidance from the Centers for Disease Control. Area jails have taken heed and implemented a range of preventative measures, including robust screening protocols and isolation periods for incoming inmates, intensified cleaning and disinfectant procedures, increased access to hygienic products and protective equipment for both inmates and staff, prohibitions on contact visits and transfers, and medical isolation for inmates with fever or potential symptoms of COVID-19. Additionally, each detention facility has a protocol for responding to the medical issues, including transporting detainees to area hospitals in the unusual event they are unable to provide in-facility care.

## **Analysis**

Two provisions from the Bail Reform Act—18 U.S.C. §§ 3142(f) and 3142(i)—require the Court to reconsider its detention order and grant the Defendant immediate release. But neither provision allows for this extraordinary relief. Moreover, if the Court were to grant release here, it would open the floodgates to similar challenges from the hundreds of pretrial detainees in the Eastern District and quickly overwhelm both the Court and the Pretrial Services Office. Accordingly, the Court should deny Defendant's request for immediate release.

---

[1] BOP has been preparing for a potential COVID-19 outbreak since January 2020. *See* Fed. Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/ news/20200313_covid-19.jsp. Effective March 13, 2020, BOP implemented Phase Two of its COVID-19 Action Plan, which required all facilities to mitigate the spread of the COVID-19 with measures that included: (1) prohibiting all social and volunteer visits; (2) restricting legal visits; (3) suspending inmate facility transfers (with allowances for medical treatment); (4) requiring staff health screening; (5) adopting a variety of coronavirus-specific protocols for inmates, such as screening new inmates and isolating and testing inmates with risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. *Id.* Since then, BOP has continued to refine its efforts. For example, Phases Four and Five include new protocols, like quarantining all incoming inmates and securing inmates in their quarters to decrease the potential for transmission. *See* Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Five*, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (Mar. 31, 2020). As a result of these proactive steps, BOP has done a remarkable job of keeping its facilities virus free and of limiting transmission to a small fraction of inmates when positive cases do occur.

I.      **Defendant fails to meet his burden for release under Title 18, United States Code, Section 3143 because he has not shown by clear and convincing evidence that he is neither a flight risk nor a danger to the community.**

Wilson did not and cannot meet his burden of proof to show he is neither a flight risk nor a danger to the community.  Wilson's motion does not even recognize the standard for his release, and it fails to meet the correct burden.  Wilson's admissions in his guilty plea and the findings of the Pretrial Services Office are sufficient to defeat Wilson's petition for release.

The correct statute governing release of a defendant awaiting sentencing is not Section 3142, but Section 3143.  Section 3143 governs the release or detention of a defendant "who has been found guilty of an offense."  18 U.S.C. §3143(a)(1).  Section 3142, by contrast, applies to "a person *charged* with an offense" and the subsections allowing release refer to the "*pretrial* release of the person."  18 U.S.C. §3142(a), (b), and (c) (emphasis added).  Courts considering motions requesting release because of COVID-19 have recognized that, for someone in Hux's position, section 3143 is the governing statute.  *United States v. Jackson*, 2020 WL 1445958, *2 n.1, Criminal Case No. 18-216 (W.D. Penn. March 24, 2020) ("Because Defendant has pled guilty and is now pending sentencing, not trial, Section 3142 does not apply. Instead, as set forth above, Section 3143 is the applicable provision."); *United States v. Rollins*, 2020 WL 1482323, *1, 11-CR-251S (W.D. N.Y. March 27, 2020) ("Rollins's custody is governed by 18 U.S.C. § 3143(a).").

Under section 3143, a defendant seeking release has the burden of proof and, because the defendant has already been convicted, the burden is a high one.  The defendant must show, "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released."  18 U.S.C. § 3143(a)(1); *United States v. Hartsell*, --- F.Supp.3d ----, 2020 WL 1482175, *2, 3:20-CR-00009-DRL-MGG (N.D. Ind. March 25, 2020)

(noting that, after a conviction, a presumption favors detention and the burden shifts to the defendant).

Wilson, while not even acknowledging his burden and the standard for his release, has failed to establish by clear and convincing evidence that he is neither a flight risk nor a danger to the community.  And it would be difficult for him to meet this burden after admitting in his guilty plea that he orchestrated the assault and "patch burning" of a fellow gang member.

Wilson's detention is in line with other courts who have rejected convicted defendants' requests for release out of concerns for COVID-19.  *Jackson*, 2020 WL 1445958, *2 (defendant failed to demonstrate COVID-19 is present or imminent in his jail, and release was not warranted, even though defendant had concerning health conditions); *Rollins*, 2020 WL 1482323 ("As serious as it is, the outbreak of COVID-19 simply does not override the statutory detention provisions above."); *United States v. Winchester*, 2020 WL 1515683, *12, 1:18-CR-00301 (M.D.N.C. March 30, 2020) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card.").

To the extent Defendant wishes to rely on Section 3142, the Court should consider *United States v. West*, No. CR ELH-19-0364, 2020 WL 1638840 (D. Md. Apr. 2, 2020) in which the Court denied a defendant's request for temporary release even though he had tested positive for COVID-19.   The Court held that "the events of COVID-19, while tragic, do not relieve this Court of the responsibility of assessing all the factors of 3142(g) in determining whether this particular Defendant poses a danger to the community."  Furthermore, the Court determined that, much like Wilson's case, the Defendant was receiving medical care in jail, had no plans for medical care should he be released, and that there was no evidence that medical care he might receive in the

community would be better than that which he was receiving in the jail, without continuing to be a threat to the safety of others.

For the foregoing reasons, Wilson does not meet the Section 3143 statutory requirements for release from detention pending sentencing.

## II.     Releasing pretrial detainees like Defendant would unduly burden the courts, the Pretrial Services Office, and a justice system already under strain from COVID-19.

Releasing pretrial detainees like Defendant not only would endanger the community but would impose significant burdens on the justice system, which is already facing significant challenges related to COVID-19. For example, detainees who are released would require some form of monitoring by Pretrial Services Office, in addition to the hundreds of defendants in the Eastern District who are already under supervision.[2] *See United States v. Robinson*, No. 4:20-cr-00023-SRC-NAB, slip op. at 3 (E.D. Mo. Mar. 26, 2020) (ECF No. 26) (rejecting request for release in part because "the coronavirus pandemic and the state and national measures that have been put in place in response to it have rendered pretrial supervision more challenging today than when [defendant] was first ordered detained"). Similarly, the Court would be inundated by requests from other detainees seeking pretrial release. *See United States v. Jackson*, No. 18-216, 2020 WL 1445958, at *2 (W.D. Penn. Mar. 24, 2020) (emphasizing concern that "many other defendants would flood the courts with similar requests").  Thus, to the extent the Court concludes that the Bail Reform Act allows Defendant to relitigate the issue of detention, it should be mindful of these

---

[2] Before a Defendant is placed on release, a Pretrial Services Officer also must vet the proposed residence and meet the proposed third-party custodian and other residents who live there. New release orders would force these Officers to conduct a substantial amount of *in-person*, *in-home* meetings, exposing them to a heightened risk of infection. "Moreover, location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel . . . ." *United States v. Hearns*, No. 1:20-CR-110, 2020 WL 1493747, at *4 (N.D. Ohio Mar. 27, 2020).

practical consequences in determining whether to grant Defendant's request for immediate release on bond.

## <u>Conclusion</u>

For the foregoing reasons, the Government respectfully requests that this Court deny Defendant's Motion for Immediate Release. *See Gileno*, 2020 WL 1307108, at *4; *Hamilton*, 2020 WL 1323036, at *2; *Harris*, No. 4:19-cr-00762-SRC, slip op. at 3–4; *Hearns*, 2020 WL 1493747, at *4; *Howard*, No. 4:19-cr-00148-ERW, slip op. at 2; *Jackson*, 2020 WL 1445958, at *3; *Jefferson*, 2020 WL 1332011, at *2; *Jones*, 2020 WL 1323109, at *1; *Leake*, 2020 WL 1905150, at *5; *Martin*, 2020 WL 1274857, at *1; *Robinson*, No. 4:20-cr-00023-SRC-NAB, slip op. at 3; *Terrone*, 2020 WL 1844793, at *14; *Toy*, No. 1:20-cr-00032-SRC-NAB, slip op. at 9–10; *Villegas*, 2020 WL 1649520, at *3; *West*, 2020 WL 1638840, at *2; *Zhou*, 2020 WL 1643634, at *3, *6–8.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/ Angie E. Danis*
ANGIE E. DANIS, #64805MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Angie E. Danis*
ANGIE E. DANIS, #64805MO
Assistant United States Attorney