UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CR-00899-RLW |
| | ) | |
| THOMAS B. WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through the United States Attorney for the Eastern District of Missouri, Jeffrey B. Jensen, Angie E. Danis, Assistant United States Attorney for said District, David L. Jaffe, Chief, Organized Crime and Gang Section, United States Department of Justice, and Bethany Lipman, Trial Attorney, and submits its sentencing memorandum as to the above-captioned Defendant.

### I.   Defendant Wilson's Conduct and Criminal History

On November 9, 2013, Defendant Wilson, a leader of the Aryan Circle gang, led other AC members in a brutal attack of a former gang member in order to punish him for alleged infractions against the gang and to permanently remove him from the Aryan Circle.   The Defendant and three other attackers struck the victim in the head with a log and punched and kicked him repeatedly. Defendant Wilson personally held a burning log to the victim's Aryan Circle tattoos in order to symbolically remove him from the gang.   The victim's injuries were severe—he was hospitalized

1

with extensive facial fractures and lacerations, a pulmonary contusion, and first and second-degree burns to his chest and upper abdomen.

The Aryan Circle is a white supremacist gang operating in prisons and on the streets across the country.   The gang has a militaristic leadership structure, a code of conduct, rules, symbols, and colors, among other organizational hallmarks.   Its members routinely engage in the types of violent and other crimes that Defendant Wilson committed over the years.

Although not all linked to his membership and leadership in the Aryan Circle, the Defendant's criminal history is among the most extensive the undersigned has ever seen and shows that this Defendant is no stranger to the criminal justice system.   His criminal history began at age 17 when he was convicted of multiple counts of stealing and burglary in the second degree on four separate occasions (none of which are included in his criminal history score because they time out under the guidelines).   ECF No. 236, Presentence Investigation Report ("PSR") at ¶¶ 39-42.   In his early 20s, he was convicted of carrying a concealed weapon (a firearm), larceny, stealing, escape, and various less serious offenses.   PSR at ¶¶ 43-48 (none of which are included in his criminal history score).   After those offenses, Defendant Wilson sustained convictions for forgery, assault in the third degree, multiple theft offenses, intimidating a city official, assaulting a person, resisting arrest, possessing an unlawful weapon, home invasion, numerous drug-related offenses, carjacking, and additional less serious offenses.   PSR at ¶¶ 66.   The Defendant's convictions and the fact that he was under a criminal justice sentence at the time he committed the instant offense result in a criminal history score of 31 and a criminal history category of VI.

The United States requests that this Court impose a sentence that is consistent with the egregious facts of the Defendant's conduct in the instant case and his wide-ranging and varied

criminal history, in addition to the factors the Defendant points out in his sentencing memorandum and that are contained in other filings before this Court.[1]

## II.     United States Sentencing Guidelines §§ 5K2.23 and 5G1.3 Are Inapplicable and Do Not Entitle the Defendant to a Downward Adjustment.

Defendant Wilson argues that his prior convictions—which simply cannot legally qualify as "relevant conduct" for the instant offense—are somehow at the same time "relevant conduct" that this Court should use to reduce his sentence pursuant to U.S.S.G. §§ 5K2.23 and 5G1.3.   This assertion misapplies the guidelines and is contrary to relevant case law.

The Defendant's argument is that he is entitled to a downward departure because his prior convictions for carjacking and drug distribution were related to his membership in the Aryan Circle gang, as is the instant offense.   Def.'s Mem. At 4-5.   The argument continues that because his prior convictions are predicate racketeering offenses[2] and the instant offense (assault resulting in serious bodily injury in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3)) requires the existence of an enterprise that engaged in racketeering activity, the prior convictions are

---

[1] The Defendant's sentencing position is rooted in the claim that he has been unfairly treated because the United States did not charge the instant offense until just before the statute of limitations ran.   Def.'s Mem. at 1-4.   The Defendant previously filed a motion to dismiss the indictment on this basis, but withdrew it and chose to plead guilty.   ECF No. 188.   The United States filed a comprehensive response detailing its good faith charging decision and explaining the timeline of the investigation, including the determination that the case was not chargeable until enterprise evidence was gathered and cooperating witness were interviewed in 2017 and 2018. ECF No. 193.   Defendant Wilson's speculative claim that he would have received a lower sentence if this case had been resolved along with his many other charges in 2015 not only fails to show he was prejudiced by the charging decision, but also should not bear heavily on this Court's sentencing analysis for the same reasons set forth in the government's response.   *See id.* at 8-16.

[2] Even if this Court concluded that prior convictions for racketeering predicates should count as credit toward the Defendant's sentence in this case, his underlying conviction for carjacking under 18 U.S.C. § 2119 is not a racketeering predicate.   *See* 18 U.S.C. 1961.

necessarily relevant conduct to the instant offense of conviction.   *Id.*   But this argument begins and ends with the mistaken premise that the Defendant's prior convictions qualify as "relevant conduct" to the instant offense.

United States Sentencing Guidelines § 5K2.23 provides that "[a] downward departure may be appropriate if" a defendant has already completed a term of imprisonment that would otherwise have been subject to adjustment pursuant to § 5G1.3.   U.S.S.G. § 5K2.23.   Section 5G1.3 then lists circumstances under which a defendant's sentence qualifies for a downward adjustment. U.S.S.G. § 5G1.3.   That analysis turns on whether another term of imprisonment "resulted from another offense that is relevant conduct to the instant offense of conviction."   U.S.S.G. § 5G1.3(b).   The purpose of this provision is to avoid "double-counting," or being sentenced twice for the same conduct.   *See United States v. Williams*, 260 F.3d 160, 167-68 (2d Cir. 2001) ("Where the prior offense has not been 'counted' in setting the offense level for the present offense, there has been no 'double counting,' and the purpose of the Guideline is not implicated.").   As the Commentary explicitly states, this guidelines provision "applies in cases in which *all* of the prior offense is relevant conduct to the instant offense" and "does not apply in cases in which the prior offense was *not* relevant conduct to the instant offense."   U.S.S.G. § 5G1.3 comm. n.2(A), (B) (emphasis added).

"Relevant conduct" is defined as a defendant's acts, or, "in the case of a jointly undertaken criminal activity," the acts of others, "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."   U.S.S.G. § 1B1.3.   The "offense of conviction" in this case is

VICAR assault resulting in serious bodily injury.[3]   That offense, by its very terms and by application of the guidelines, simply does not and cannot permit consideration of criminal conduct outside the assault itself in calculating the appropriate guidelines range.   To put it simply, Defendant Wilson's carjacking and drug distribution—whether related to a criminal enterprise or not—did not "occur[] during the commission of the [VICAR assault], in preparation for [the VICAR assault], or in the course of attempting to avoid detection or responsibility for [the VICAR assault].   *Id.*   These two offenses cannot be used to calculate additional punishment in his guidelines range for VICAR assault (as they could if they constituted relevant conduct).   Where those offenses cannot be used to increase the Defendant's offense level for this count of conviction, as of course they cannot, it would contradict the plain text and purpose of the guideline provision to reduce his sentence on that ground.   In other words, the Defendant cannot rely on, and benefit from, his punishments for other, prior bad behavior to seek a reduction of his sentence for this unrelated offense.

Although many cases were decided prior to clarifying amendments to § 5G1.3, courts have long recognized that where, as here, prior convictions are not considered in calculating the guidelines range for the instant offense, defendants are not entitled to reductions under this provision.   *See, e.g.*, *Williams*, 260 F.3d at 167 (concluding that "a defendant cannot enjoy the benefits of section 5G1.3(b) unless the district court *in fact* incorporated his prior offense as relevant conduct in the instant prosecution"); *United States v. Brown*, 232 F.3d 44, 49 (2d Cir. 2000) (holding district court properly applied 5G1.3 without giving defendant credit for prior term

---

[3] VICAR assault is not itself a racketeering predicate, and the undersigned are unaware of any case in which the applicable guideline has ever been read to include racketeering predicates as relevant conduct in calculating sentences for a VICAR assault.

of imprisonment because term "did *not* result from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense"); *United States v. Villanueva*, 14 F. App'x 84, 85-86 (2d Cir. 2001) ("Our review of the record indicates that [defendant's] state court conviction was not taken into account in the determination of his federal sentence; section 5G1.3(b) is therefore inapplicable.   The plea agreement demonstrates that [defendant's] narcotics conviction was considered in determining his Criminal History Category, not as a factor used to determine his base offense level as section 5G1.3(b) requires."); *Abramo v. United States*, No. 12-cv-1803, 2014 WL 1171735, at *19 (S.D.N.Y. Mar. 21, 2014) ("In order for [§ 5G1.3](b) to apply, petitioner must have been subject to an undischarged term of imprisonment, and the conduct underlying that sentence must have been relevant and been fully taken into account in the determination of petitioner's offense level.").   And although case law on the relevant provisions as they relate specifically to VICAR are sparse, that case law also undermines the Defendant's argument.   *See United States v. Padilla*, No. 97-cr-809, 2007 WL 1541779, at *1 (S.D.N.Y. May 25, 2007) (rejecting defendant's argument that prior state conviction was relevant conduct for VICAR conviction).   The United States has not located, and the Defendant does not cite, any case in which a court reduced a defendant's sentence for prior convictions which are not counted as relevant conduct to the instant offense.[4]

---

[4] Defendant Wilson makes much of the enterprise element of his VICAR conviction, and it is only through that element that he attempts to shoehorn his prior convictions into the guidelines' definition of relevant conduct.   But the Defendant fails to recognize that the focus of VICAR, and Congress's intent in passing this independent statute, does not deal with any defendant's prior racketeering activity; it only focuses on the *enterprise's* racketeering activity and the *defendant's* current, enumerated federal offense, in this case assault (which is not even a type of racketeering activity itself).   Indeed, no element of VICAR offenses require that a defendant personally commit racketeering activity, let alone suggest that prior racketeering activity engaged in by a defendant should count as relevant conduct to a VICAR offense.   *See, e.g.*, *United States v. Crenshaw*, 359

Indeed, if this Court were to accept Defendant Wilson's expansive view of relevant conduct as it relates to VICAR assault, then the Probation Department could include all the conduct the Defendant references, and more—counting any racketeering acts his fellow gang members committed that were reasonably foreseeable to him—in calculating his offense level for this single count of VICAR assault.   Such a result would certainly constitute procedural error.   Similarly, treating Defendant Wilson's prior convictions as relevant conduct and granting his request to reduce his sentence by any amount pursuant to U.S.S.G. §§ 5G1.3 and 5K2.23 would be error.

## III.   Conclusion

The United States respectfully requests that this Court consider all filings submitted and impose a sentence that comports with the § 3553(a) factors.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

DAVID L. JAFFE
Chief, Organized Crime & Gang Section

/s/ Angie E. Danis
ANGIE E. DANIS, #64805MO
Assistant United States Attorney
111 S. Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200

/s/ Bethany J. Lipman
BETHANY J. LIPMAN, #5325444 NY
Trial Attorney, Department of Justice
1301 New York Avenue, NW, Suite 600

---

F.3d 977, 991 (8th Cir. 2004) (describing elements of VICAR murder).

Washington, D.C. 20005
(202) 431-9453


## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020, I caused a true and correct copy of the foregoing to be filed *ex parte* electronically with the Clerk of the Court, and also served via electronic mail upon the following:

Stephen R. Welby
Counsel for defendant Thomas Wilson

 /s/ Angie E. Danis
ANGIE E. DANIS, #64805MO
Assistant United States Attorney